UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ALEXANDRA SANCHEZ, DEANNA BRUMBAUGH, DIANA ALLEN, and SHERI DUHME, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:23-cv-04007-SLD |
| ROCK ISLAND COUNTY HEALTH DEPARTMENT and ROCK ISLAND COUNTY, ILLINOIS, | ) ) ) ) ) |
| Defendants. | ) |

ORDER

Before the Court is a motion to bar the expert of Defendant Rock Island County Health Department ("RICHD") filed by Plaintiffs Alexandra Sanchez, Deanna Brumbaugh, Diana Allen, and Sheri Duhme, ECF No. 37. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiffs, former employees of a local government public health agency, each filed suit against RICHD and Rock Island County, Illinois ("the County") alleging that their previous employer, RICHD, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. Each case has been consolidated into this action. *See* Feb. 9, 2023 Text Order; Feb. 3, 2023 Order, *Brumbaugh v. Rock Island Cnty. Health Dep't*, 4:23-cv-04020-SLD-JEH, ECF No. 3 (Hawley, M.J.); May 3, 2023 Order, *Allen v. Rock Island Cnty. Health Dep't*, 4:23-cv-04066-SLD-JEH, ECF No. 3 (Hawley, M.J.); May 3, 2023 Order, *Duhme v. Rock Island Cnty. Health Dep't*, 4:23- cv-04067-SLD-JEH, ECF No. 3 (Hawley, M.J.). The purported violations stem from their employer's failure to accommodate their religious beliefs, first, when

1

it denied their exemptions from a COVID-19 vaccination requirement, and later when Plaintiffs were terminated for failing to get vaccinated. *See generally* Am. Compl., ECF No. 27. The Court denied motions to dismiss filed by RICHD and the County, Aug. 9, 2023 Order, ECF No. 16; Sept. 20, 2024 Order, ECF No. 32, and the parties are now completing discovery.

Pursuant to Federal Rule of Civil Procedure 26, RICHD disclosed an expert witness, Dr. Ramzi Asfour. Def.'s Expert Disclosure, Mot. Bar Expert Ex. 1, ECF No. 37-1 at 1–2. Dr. Asfour was asked to "provide his opinion concerning the proper approach of a public health entity to evaluating requests from employees to be exempted from" vaccination requirements and to provide epidemiological evidence related to vaccine efficacy compared to other mitigation methods. *Id.* at 1. Plaintiffs filed the instant motion to bar Dr. Asfour, arguing that his opinion violates the standards of Federal Rules of Evidence 702 and 704. *See generally* Mot. Bar Expert; Mem. Supp. Mot. Bar Expert, ECF No. 38. RICHD opposes the motion. Resp. Mot. Bar Expert 1, ECF No. 39.

## DISCUSSION

### I. Legal Standard

Exclusion of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides that a qualified witness—one with the appropriate knowledge, skill, experience, training, or education—may testify in the form of an opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. To determine whether an opinion is admissible, the court must consider whether (1) the witness is qualified; (2) the expert's methodology is reliable; and (3) the testimony is relevant in that it will assist the trier of fact to understand the evidence or determine a fact in issue. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). The party seeking to admit the expert's testimony must show that it satisfies these standards by a preponderance of the evidence. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017).

## II.     Analysis

Plaintiffs argue that the opinion of Dr. Asfour is inadmissible for various reasons—most of which invoke Rule 702. They begin by arguing that the content of the opinion falls outside the scope of Dr. Asfour's expertise, so he is not qualified to provide the opinion. Mem. Supp. Mot. Bar Expert 2–3. Plaintiffs then contend that the opinion is riddled with legal conclusions, offends the principles of Rule 704, and abrogates the role of a jury. *Id.* at 6–8, 11–14. Pointing to the standards under Rule 702(d), they briefly argue that Dr. Asfour's opinion falls short of what is required for reliability, *id.* at 6, and then that the opinion will not aid the trier of fact, *id.* at 3–4, 8–11. RICHD responds to these arguments, first explaining how the proffered expert opinion meets the standards under Rule 702, and then refuting or dismissing the remaining contentions. *See generally* Resp. Mot. Bar Expert. Parts of Plaintiffs' motion relate to different statements contained within the opinion, and some of the arguments attack the opinion in its entirety. *See generally* Mem. Supp. Mot. Bar Expert. Arguments related to specific statements will be addressed first.

### a. Whether the Statements Fall Outside of Dr. Asfour's Expertise

Plaintiffs attempt to limit the introduced statements by arguing that Dr. Asfour is not qualified to provide some of the opinion. Mem. Supp. Mot. Bar Expert 2–3. They state that Dr. Asfour is a medical doctor with an expertise in public health who "is not qualified to render . . . opinions regarding religion or religious exemptions." *Id*. The following statements are at issue:

> [M]ost religious exemption requests for COVID-19 vaccination should be carefully scrutinized. Many major religious organizations publicly endorsed vaccination, recognizing the collective responsibility to protect vulnerable populations. Given this widespread support, religious exemptions should generally be denied unless there is a clear and specific doctrinal basis for objection.

Report of Dr. Asfour 12, Mot. Bar Expert Ex. 2, ECF No. 37-1 at 3–15.

As stated, the Federal Rules of Evidence permit an expert witness to testify "in the form of an opinion" if, as relevant here, the witness "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The scope of an expert's qualification is limited to the subject area in which the expert possesses expertise. *See United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("[T]he opinion must be an expert opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert." (quotation marks omitted)); *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." (quotation marks omitted)). "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The ultimate inquiry is "whether [the expert's]

qualifications provide a foundation for [the expert] to answer a specific question." *Gayton*, 593 F.3d at 617 (quotation marks omitted).

RICHD does not dispute that Dr. Asfour is not qualified to give a religious opinion. *See* Resp. Mot. Bar Expert 7. Instead, it argues that Plaintiffs are mischaracterizing Dr. Asfour's opinion as an opinion on religious matters. *Id.* RICHD contends that Dr. Asfour's opinion—even where he mentions that many religious organizations support vaccination—concerns how a health facility like RICHD should have responded to requests for an exemption from a COVID-19 vaccination requirement from a public health perspective. *See id.* at 4–9. RICHD further explains that this type of testimony is necessary to support its undue burden defense—*i.e.*, that granting the "exemptions would have imposed an undue hardship on its operations by fundamentally undermining its core mission as a public health entity battling the COVID-19 pandemic, creating an unreasonable risk that members of the community it served would lose confidence in its operations, and creating an unreasonable risk of spreading" the virus. Resp. Mot. Bar Expert 3–6.

The Court agrees that the argument that Dr. Asfour has given religious opinions is based on reading words and phrases in the last paragraph of the report without regard for the full context of the opinion.[1] Initially, the Court notes that one statement Plaintiffs take issue with is

---

[1] Plaintiffs point to two cases in support of their argument, neither of which are persuasive. The first is *Perez v. City of Austin*, No. A-07-CA-044, 2008 WL 2557492, at *3 (W.D. Tex. June 19, 2008), which they cite for the contention that a law enforcement officer was not allowed to provide his opinion on religious discrimination. Mem. Supp. Mot. Bar Expert 3. The second is *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991), which Plaintiffs cite for the idea that "[a]n expert must . . . stay within the reasonable confines of his subject area and cannot render expert opinions on an entirely different field or discipline." Plaintiffs employ this authority to argue that "Dr. Asfour is not staying 'within the reasonable confines of his subject area' and instead" is opining on an "entirely different field." Mem. Supp. Mot. Bar Expert 3. Unfortunately, neither case has a strong application to the facts present here. *Perez* gives no detail as to what the officer's qualifications were or what his testimony included—it is difficult to see how it applies to the facts at hand. *See* 2008 WL 2557492, at *3. Additionally, in *Wheeler*, the appellate court agreed that the testimony at issue was admissible despite the expert's venture outside of his subject area. 935 F.2d at 1101. This authority does not convince this Court that Dr. Asfour's opinion should be limited.

5

merely a statement of fact, not an opinion. *See* Report of Dr. Asfour 12 ("Many major religious organizations publicly endorsed vaccination, recognizing the collective responsibility to protect vulnerable populations."). (And Dr. Asfour cites support for this fact earlier in this report. *See id*. at 11.) The other two statements Plaintiffs object to are opinions on a public health-informed approach to requests for a religious exemption considering the public-health principles Dr. Asfour identifies earlier in his report. *Id.* Dr. Asfour offers no opinions on religious matters.[2]

A recent district court case granting a motion to bar two experts' opinions in a vaccine exemption case offers a useful comparison. *See Slattery v. Main Line Health, Inc.*, No. 22-4994, 2025 WL 897526, at *9 (E.D. Pa. Mar. 24, 2025). The plaintiff, herself a physician, requested a religious exemption from a COVID-19 vaccination requirement based on her beliefs as an Evangelical Christian. *See id.* at *2. Her request was denied, and she was ultimately terminated. *Id*. at *3. The district court excluded testimony based on one of Dr. Peter McCullough's expert reports in which he opined on "whether [the plaintiff's] religious beliefs demonstrated a valid belief system based upon her understanding of COVID" because it found that he was "not qualified to opine on religious matters." *Id.* at *4–5. Dr. McCullough was a board-certified cardiologist and internist. *Id.* at *4. Yet, he opined on whether the plaintiff's objection to

---

[2] Plaintiffs do not argue that Dr. Asfour is unqualified to opine on public health matters. Mem. Supp. Mot. Bar Expert 2–3. As the burden is on RICHD to establish that the expert is qualified, it informs the Court that Dr. Asfour is board-certified in infectious diseases and internal medicine, having attended a fellowship specializing in infectious diseases and having worked for the World Health Organization. Resp. Mot. Bar Expert 4; *see also* Report of Dr. Asfour 1; Dr. Asfour CV 1, 2, Mot. Bar Expert Ex. 3, ECF. No. 37-1 at 16–20. His experience practicing medicine in the area of infectious diseases spans seventeen years, with over 72,000 patient encounters. Report of Dr. Asfour 1. He has recent experience in consulting hospitals and other healthcare facilities on "policies, procedures and protocols relating to COVID-19." Dr. Asfour CV 1. He was retained by RICHD to opine on "the proper approach of a public health entity to evaluating requests from employees" for exemption from a COVID-19 vaccination requirement in light of the severity of the pandemic in October 2021 and the relative efficacy of alternative methods of mitigation compared to vaccination. Def.'s Expert Disclosure 1. RICHD has met its burden of establishing that Dr. Asfour has the necessary qualifications to give his opinion. *See* Resp. Mot. Bar Expert 4.

vaccination comported with her religious beliefs, discussing "Christian religious beliefs and scripture in his report." *Id.* at *5 (quotation marks omitted).

Unlike Dr. McCullough, Dr. Asfour does not purport to opine about the sincerity of anyone's religious beliefs. Instead, he highlights various reasons that it was important from a public health perspective that healthcare workers be vaccinated, and based on those factors, opines that healthcare entities should carefully scrutinize requests for religious exemptions from COVID-19 vaccination requirements. Report of Dr. Asfour 11–12. Further, he opines that the scrutiny should be accomplished by identifying whether there was a "clear and specific doctrinal basis for objecti[ng]" to getting the vaccine. *Id.* This is not a religious opinion, so Plaintiffs' argument that Dr. Asfour should be barred from testifying in line with the last paragraph of his report on the basis that it is outside his expertise is denied.[3]

---

[3] It is worthwhile to note that the *Slattery* court identified no issue with the expert opinion of Dr. Daniel Salmon, the Director of the Institute for Vaccine Safety at Johns Hopkins Bloomberg School of Public Health, who opined:

> In September 2021, COVID-19 was a substantial threat to staff and patients in health care institutions. Health care staff were disproportionately impacted by COVID-19 and patients in health care settings were at increased risk of serious disease and death because of underlying health conditions and/or age . . . . Mandatory COVID-19 vaccine policies were necessary in health care settings given the need for extremely high vaccine coverage necessary in health care settings and inadequate vaccine coverage that could be accomplished through education and access to free vaccine. The small number of persons with valid medical contraindications to vaccination must be given medical exemptions to mandatory policies. Health care institutions often also allowed religious exemptions for persons with sincerely held religious beliefs against vaccination. However, these health care institutions needed to limit exemptions to those persons with sincerely held religious beliefs that precluded vaccination in order to protect their staff and patients. Easily granting religious exemptions to all persons who requested them, including those without sincerely held religious beliefs precluding vaccination, would have undermined the vaccine requirement leading to substantial disease, disability and death among health care staff and patients.

*Slattery*, 2025 WL 897526, at *6. Dr. Asfour's opinion is most comparable to what Dr. Salmon was permitted to opine. *See* Report of Dr. Asfour 11–12 (explaining the history of the COVID-19 vaccine in the healthcare workplace and opining that "most religious exemption requests for COVID-19 vaccination should be carefully scrutinized"). Additionally, like Dr. Salmon's opinion, Dr. Asfour's opinion is being introduced to support an undue burden defense—not whether any religious beliefs were sincerely held. Resp. Mot. Bar Expert 4–6; *Slattery*, 2025 WL 897526, at *1.

b. **Whether the Opinion Contains Legal Conclusions**

Plaintiffs argue that parts of the opinion are legal conclusions in violation of Rules 702 and 704. Mem. Supp. Mot. Bar Expert 6–8, 11–14. The following statements at issue are:

> Employers in the healthcare section have a legal and ethical responsibility to ensure a safe working environment, minimizing the risk of serious illness. During the pandemic, measures such as social distancing, masking, improving ventilation, and vaccination were crucial to this effort. Without vaccination, employees who contracted severe COVID-19 at work could lead to employer liability for their illness or death. . . . [H]ealthcare workers serve as trusted sources of medical information for their communities. They have an ethical obligation to protect both the population they serve and themselves, setting an example by getting vaccinated. . . . Given this widespread support, religious exemptions should generally be denied unless there is a clear and specific doctrinal basis for objection.

Report of Dr. Asfour 11–12.

"Federal Rule of Evidence 704 allows opinion witnesses to testify as to the ultimate issue in an action. But Rule 704 still does not authorize opinions to be legal conclusions." *Trexler v. City of Belvidere*, No. 3:20-cv-50113, 2023 WL 415184, at *4 (N.D. Ill. Jan. 25, 2023) (citing *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)). Experts are not permitted to testify "as to legal conclusions that will determine the outcome of the case." *Good Shepherd*, 323 F.3d at 564. They also cannot "testify about legal issues on which the judge will instruct the jury." *United States v. Sinclair*, 74 F.3d 753, 757–58 n.1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case."). Upon review, the Court agrees that some of these statements cross into inadmissible content because they contain either a legal conclusion or an interpretation of the law.

Dr. Asfour opines on how "employer liability" is affected by a potential COVID-19-related illness or death. Report of Dr. Asfour 11. And, while Plaintiffs do not take issue with this part of the opinion, Dr. Asfour recounts, verbatim, the definition of religion under Title VII.

8

*Id*. at 10. Expert testimony that is based "largely on purely legal matters" is not admissible. *Good Shepherd,* 323 F.3d at 564; *see also CDX Liquidating Trust ex rel. CDX Liquidating Tr. v. Venrock Assocs.,* 411 B.R. 571, 587 (N.D. Ill. 2009) ("Expert testimony about the governing law is barred . . . because it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently."). Allowing Dr. Asfour to opine as to the definition of religion under Title VII and interpret an employer's liability related to COVID-19 illness or death would run the risk of confusing a jury with multiple presentations of the law and infringes on the Court's role. *See also Halperin v. Richards*, 665 B.R. 626, 643 (E.D. Wis. 2024) (excluding the testimony of a retired judge as duplicative and irrelevant where he was retained to explain "complex areas of the law"); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming the exclusion of testimony "about the meaning of the statute and regulations" and writing: "That's a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge." (citation omitted)).

  RICHD's first argument in support of the admissibility of these statements is that Dr. Asfour does not inform a finder of fact "how to decide any issue of consequence in this case" because the main considerations will be "whether Plaintiffs' alleged religious beliefs were sincerely held," and "whether the hardship imposed by granting Plaintiffs' requested exemptions was 'undue.'" Resp. Mot. Bar Expert 14. But this argument does not address the core issue here. It is for the Court to instruct what standards are relevant, and for the factfinder to determine if Plaintiffs met any such standard.

  The other half of RICHD's admissibility argument is that the doctrine of judicial estoppel applies, as Plaintiffs' current position is "facially inapposite" to what they successfully argued in

9

defense to RICHD's motion to dismiss. *See* Resp. Mot. Bar Expert 12–13 (arguing that Plaintiffs should be estopped from advancing the position that "the foundational factual support for the Health Department's undue hardship defense constitutes 'legal conclusions'" because it is "facially inapposite to their successfully-asserted position in response to [RICHD's] motions to dismiss this litigation that the existence or nonexistence of an undue hardship in this case was an issue of fact which required additional development, not an issue of law"). Under the equitable doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alteration omitted) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

This misconstrues what Plaintiffs are arguing—they are not contending that all of Dr. Asfour's statements are inadmissible legal conclusions and are not arguing that an undue burden defense is an issue of law rather than fact. *See* Mem. Supp. Mot. Bar Expert 6–8. Instead, they ask to limit what he can opine on, as his report contains statements that instruct on points of law which may confuse the jury and impede on the Court's role. *Id*. Plainly, these positions are not inconsistent, and RICHD does not otherwise explain how this doctrine would apply. *But see The Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2014 WL 1979261, at *4 (N.D. Ill. May 15, 2014) (applying the doctrine of judicial estoppel and barring an expert's testimony where the expert's interpretation of a patent's claims was "clearly inconsistent" with the plaintiff's position at summary judgment). Plaintiffs are not estopped from asking the Court to analyze the proffered opinion under the relevant standards for admissibility, and RICHD's estoppel argument does not

change the Court's conclusion that Dr. Asfour cannot opine on the definition of religion under Title VII or employer liability related to COVID-19 illness or death.

However, the Court does not find an issue with the other parts of the opinion that Plaintiffs argue contain impermissible conclusions. Dr. Asfour states that "religious exemptions should generally be denied unless there is a clear and specific doctrinal basis for objection," and makes other remarks related to a healthcare workers' ethical duties and responsibilities. Report of Dr. Asfour 11–12. The Court "must recognize the difference between 'stating a legal conclusion' (which is not permitted) and 'providing concrete information against which to measure abstract legal concepts' (which is permitted)." *United States v. Neushwander*, No. 15 CR 542-1, 2017 WL 4572212, at *3 (N.D. Ill. Oct. 14, 2017) (citing *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007)). Dr. Asfour's statements offer his perspective on public health matters and provide background for RICHD to make its arguments related to whether granting religious exemptions constituted an undue burden. *Compare Neushwander*, 2017 WL 4572212, at *4 (finding that an expert may not opine on whether a defendant committed fraud), *with United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006) (explaining how expert testimony is permissible as "to the effect that financial transactions did not comply with regulations and appeared to be fraudulent"). In other words, the challenged statements here do not state the law or inform a factfinder as to what the outcome should be, they only provide information against which a factfinder may measure whether RICHD faced an undue burden.

The Court will limit Dr. Asfour's opinion as to his statement on employer liability related to COVID-19 illness or death, and the definition of religion under Title VII. Those are matters designated for the Court to instruct on; all other statements do not constitute legal conclusions.

11

### c. Whether the Opinion Meets the Standards of Reliability

The next argument is related to reliability. From what the Court can decipher from Plaintiffs' motion, they do not challenge that the underlying data or methodologies used to formulate Dr. Asfour's opinion were unreliable; however, they seemingly do contend that his opinion cannot meet the requirements under Rule 702(d). *See* Mem. Supp. Mot. Bar Expert 6 (arguing that RICHD "cannot meet [its burden to establish admissibility] as to Dr. Asfour under 702(a) or (d).").

Rule 702 requires a court to determine whether the expert's testimony is "based on sufficient facts or data" and whether the testimony is "the product of reliable principles and methods." *See* Fed. R. Evid. 702(b), (c). Subsection (d)—which requires a court to determine whether the "expert's opinion reflects a reliable application of the principles and methods to the facts of the case," *id.* 702(d)—raises the question of whether the expert "has 'bridged the analytical gap' between the mere existence of his principles and methods in theory and his application of them to the specific facts of the case before the court." *United States v. Scott*, No. 3:11-CR-104, 2013 WL 252247, at *7 (N.D. Ind. Jan. 23, 2013) (citing *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 536 (7th Cir. 2005), *partially vacated on other grounds*).

Dr. Asfour begins his expert report by outlining "[a] meta-analysis with seven studies with 21,618,297 COVID-19 patients," and explained how "unvaccinated patients were 2.46 times more likely to die from COVID-19." Report of Dr. Asfour 5. He analyzed the drop in the death rate after the introduction of the vaccine, specifying how the weekly deaths in Rock Island County decreased from five to one from late 2021 to early 2022. *Id*. at 6. Dr. Asfour then discusses how religious groups generally do not object to vaccinations from a public health standpoint. *Id*. at 11. From this data, Dr. Asfour explains the "critical reasons why" the vaccine

was essential for healthcare workers: it was the most effective method for preventing severe cases and it made workplace environments safer. *Id*. at 13–14. He describes how this data connects to an employer's decision to handle exemption requests, and how there is an ethical principle of risk-mitigation. *Id*. at 13.

      Dr. Asfour's application of data to the facts at hand does not run afoul of what is required under Rule 702(d). RICHD has met its burden of establishing the evidence used "is reliable data from trusted sources" like information the Centers for Disease Control, articles from the American Bar Association, and other published, peer-reviewed medical journal studies. Resp. Mot. Bar Expert 6. Further, an expert's opinion may be based in "personal knowledge or experience" rather than pure scientific analysis. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]here are many different kinds of experts, and many different kinds of expertise."). Dr. Asfour has over seventeen years of experience in treating infectious diseases and has recently shifted his career to consulting healthcare entities specifically on COVID-19 responses—expertise that he pulls from to formulate his opinion. Dr. Asfour CV 1. The "analytical gap" from this data to Dr. Asfour's opinion on how employees and employers navigate vaccination mandates and exemption requests is bridged. The expert opinion does not circumvent Rule 702(d).

      **d. Whether the Opinion is Relevant**

      Lastly, the Court will address Plaintiffs' arguments that Dr. Asfour's opinion will not be helpful to the finder of fact for a few reasons, because it is irrelevant "to the extent [he] is supporting or justifying the vaccine" as that is not an issue before the jury, and because the language Dr. Asfour uses is too general. Mem. Supp. Mot. Bar Expert 7–11.

Part of this Court's analysis under Rule 702 is whether "the expert testimony will assist the trier of fact." *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019). "Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Davis v. Duran*, 276 F.R.D. 227, 231 (N.D. Ill. 2011). "A witness should not be allowed to put an expert gloss on a conclusion that the jurors should draw themselves." *United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012) (quotation marks omitted).

Plaintiffs argue that much of Dr. Asfour's opinion consists of mere "facts which appear solely intended to justify the vaccine mandate itself which is not the issue for this jury." Mem. Supp. Mot. Bar Expert 9–11. RICHD contends that Dr. Asfour's opinion does two things: (1) informs the finder of fact about the severity of the pandemic in Rock Island County, the efficacy of the vaccine, and the public health obligations of healthcare workers in responding to the pandemic; and (2) comments on how healthcare entities should have reasonably handled religious exemption requests. Resp. Mot. Bar Expert 4. RICHD has made clear that these statements go to the basis of its defense that providing an exemption to Plaintiffs would create an unreasonable risk of harm. *Id.* at 4–6. Accordingly, Dr. Asfour's opinion will aid the factfinder by providing a better understanding of how the rates of infection during the COVID-19 pandemic changed based on the availability and use of the vaccine, which connects to the analysis of whether RICHD faced an undue burden in granting exemption requests.

Plaintiffs' cited case, *Strandquist v. Washington State Department of Social and Health Services*, No. 3:23-cv-05071, 2024 WL 4625337, at *4 (W.D. Wash. Oct. 30, 2024), does not convince the Court otherwise. The court in *Strandquist* excluded part of the plaintiff's expert's opinion related to "the efficacy of COVID-19 vaccines generally, the role of natural immunity, and the Governor's [vaccine requirement]" because the plaintiff was not challenging the mandate

14

on its face, so the excluded portion was not helpful to the trier of fact. However, the issues here are informed by Dr. Asfour's opinion and RICHD's defense requires such background. *Cf., e.g., Efimoff v. Port of Seattle*, No. 2:23-cv-01307, 2024 WL 4765161, at *10 (W.D. Wash. Nov. 13, 2024) (outlining how the expert testimony of a board-certified physician in infectious diseases, who evaluated the public health strategy of mandating vaccines in the workplace and the history of the pandemic, provided support in a religious discrimination case); *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1156 (D. Or. 2024) (discussing how expert epidemiological evidence and "abundant, unrefuted evidence of COVID-19's effect on [its] patients, employees, and ability to fulfill [its] mission" established the defendant's undue burden defense). Therefore, Plaintiffs' argument related to relevancy is rejected.

Plaintiffs next argue that the opinion is too vague due to Dr. Asfour's use of words like "most," "many," and "generally." Mem. Supp. Mot. Bar Expert 3–4. They put forth that this use renders Dr. Asfour's opinion imprecise. *Id*. Plaintiffs' cited cases—one which upheld a decision to discredit a doctor's opinion on disability because the doctor only relied on general studies, not the patient's specifics, and another which discredited an expert's testimony as to the extent of an insured's damages because his opinion was largely vague and because he failed to estimate the actual costs of damaged items—do not convince the Court that Dr. Asfour's opinion will be unhelpful to the finder of fact. *See id*. at 4 (first citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 757 (6th Cir. 2019) and then *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-Civ, 2019 WL 1318090, at *4 (S.D. Fla. Mar. 22, 2019)). Because RICHD uses this expert opinion to bolster its argument that providing the exemptions would have created an undue burden, a part of the factfinder's role will be to understand the pandemic's impact on employers. Dr. Asfour's

15

opinion is not too vague to provide this background. RICHD has met its burden in establishing how the expert opinion will aid the finder of fact.

In sum, RICHD has met its burden to establish that the majority of Dr. Asfour's expert opinion meets the relevant standards; he is qualified to opine on matters of public health, his methodology was reliable, and the testimony is relevant. Plaintiffs' arguments are largely rejected, however, the opinion will be limited to exclude the statements on employer liability related to COVID-19 illness or death and the definition of religion under Title VII.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to bar or exclude Defendant Rock Island County Health Department's expert, ECF No. 37, is GRANTED IN PART and DENIED IN PART.

Entered this 12th day of May, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
