E-FILED
Wednesday, 13 May, 2026 09:54:49 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ALEXANDRA SANCHEZ, DIANA ALLEN, SHERI DUHME, and DEANNA BRUMBAUGH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-04007-SLD-RLH |
| ROCK ISLAND COUNTY, | ) ) ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court are Plaintiffs Alexandra Sanchez, Diana Allen, Sheri Duhme, and

Deanna Brumbaugh's Motion in Limine, ECF No. 67; and Defendant Rock Island County's

("the County") Motion in Limine, ECF No. 71, and Motion for Leave to File a Reply, ECF No.

74.  For the reasons that follow, Plaintiffs' Motion in Limine is GRANTED IN PART and

DENIED IN PART; the County's Motion in Limine is GRANTED IN PART and DENIED IN

PART; and the County's Motion for Leave to File a Reply is GRANTED.

## I.    Motion for Leave to File a Reply

"A reply to the response is only permitted with leave of Court."  Civil LR 7.1(B)(3).

"Typically, reply briefs are permitted if the party opposing a motion has introduced new and

unexpected issues in his response to the motion, and the Court finds that a reply from the moving

party would be helpful to its disposition of the motion . . . ."  *Shefts v. Petrakis*, No. 10-cv-1104,

2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  A court may also permit a reply "in the

interest of completeness."  *Zhan v. Hogan*, No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at

*2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).  Here, the County requests leave to file a

reply, arguing that "the interests of justice are furthered by consideration of the attached reply

brief." Mot. Leave to File Reply 1. Because the proposed reply would be helpful to the Court and in the interest of completeness, the County's Motion for Leave to File a Reply is GRANTED. The Clerk is DIRECTED to file the reply, ECF No. 74-1, on the docket.

## II.    Motions *in Limine*

### a.    Legal Standard

As part of its "inherent authority to manage the course of trials," a district court may make *in limine*, or preliminary, rulings on evidentiary matters. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). At this stage, a court will exclude evidence only where it "clearly would be inadmissable [sic] for any purpose." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). It is the movant's burden to make this showing. *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-cv-5836, 2017 WL 2178504, at *11 (N.D. Ill. May 16, 2017). "[J]udges have broad discretion in ruling . . . on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). These preliminary rulings are subject to change, however, based on how the evidence unfolds at trial or in the exercise of sound discretion. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

### b.    Analysis

Plaintiffs present sixteen requests for *in limine* rulings, *see generally* Pls.' Mot. in Lim., and the County presents nineteen requests for *in limine* rulings, *see generally* Cnty.'s Mot. in Lim. The Court will refer to them as separately numbered motions. The Court will first dispose of all unopposed motions, and then discuss each remaining motion in turn, organized by subject.

Plaintiffs' motions one, two, three, five, eight, ten, eleven, fourteen, and fifteen are GRANTED as they are all unopposed. Resp. Pls.' Mot. in Lim. 1, ECF No. 70. The County's

2

motions one, two, three, eight,[1] nine,[2] ten, sixteen, seventeen,[3] and eighteen are also all unopposed and thus GRANTED. Resp. Cnty.'s Mot. in Lim. 1, ECF No. 72.

### i. Evidence and Testimony Disclosures

### 1. Plaintiffs' Motion Four

Plaintiffs' motion four seeks an order barring "[a]ny opinion testimony not timely disclosed in discovery by the defendant as required by Federal Rule of Civil Procedure 26(a) and the deadlines under the Pre-Trial Order filed in this case." Pls.' Mot. in Lim. 3. The County argues that Plaintiff's motion requests too broad a ruling. Resp. Pls.' Mot. in Lim. 2. It agrees that *expert* opinion testimony not disclosed under Rule 26(a) should be barred from trial, *id.*— indeed, the County requested, and Plaintiffs did not oppose, an order prohibiting undisclosed expert opinion testimony. *See* Cnty.'s Mot. Limine 3. However, the County argues that to the extent Plaintiffs' request would include lay opinion testimony, that is not proper. *See* Resp. Pls.' Mot. in Lim. 22 ("Defendant requests any order granting Plaintiffs' request here be limited to only expert opinion testimony and not bar any lay opinion testimony which Defendant's disclosed witnesses might provide."). Plaintiffs reply that "regardless of whether Rule 701 requires disclosure to allow lay opinions at trial, clearly other federal rules do require pre-disclosure." Reply Supp. Pls.' Mot. in Lim. 2, ECF No. 73 (emphasis omitted).[4] Plaintiffs point to Rule 26(a)(1), which requires disclosure of the names of potential witnesses, and state that

---

[1] Plaintiffs do not contest this motion, but point out that, if the County brings up this issue, it will have "opened the door to Plaintiffs' clarifications." Resp. Cnty.'s Mot. in Lim. 7. The Court does not understand this to be a genuine reason for opposition, so considers the motion unopposed.

[2] Plaintiffs issue the "same caution" as they did with the County's motion eight. Resp. Cnty.'s Mot. in Lim. 8. Again, this motion is treated as unopposed.

[3] Plaintiffs do not contest this motion, but "reserve[] the right to confirm" that Dr. Asfour is not rendering opinions beyond his scope. Resp. Cnty.'s Mot. in Lim. 20. This reservation is unnecessary, so the motion is treated as unopposed.

[4] Plaintiffs did not request leave to file their reply, but as the Court has granted Defendant's request for a reply, it will also consider Plaintiffs' reply.

they "propounded specific interrogatories seeking disclosure of lay testimony." *Id.* However, Plaintiffs do not provide the Court with the interrogatories they refer to and upon which the Court could base its ruling. And Rule 26(a)(1) does not require a party to specifically disclose a lay witness's opinion like Rule 26(a)(2) requires disclosure of an expert witness's opinion. If Plaintiffs are simply arguing that failure to disclose a witness bars testimony from that witness at trial, that request is encompassed by their motion nine, which the Court addresses next. The Court GRANTS IN PART Plaintiffs' motion four. Any undisclosed expert opinion testimony is BARRED from trial.

### 2. Plaintiffs' Motion Nine

Plaintiffs' motion nine seeks an order barring "[a]ny evidence or testimony from any witness not specifically disclosed prior to the close of discovery by the defendants under Federal Rules of Civil Procedure 26(a), 33 and 34." Pls.' Mot. in Lim. 7. The County argues that "[w]hile this request is proper insofar as it applies to Defendant's core fact witnesses, it goes too far in that Plaintiffs make no exception for witnesses who either (1) are used for the purposes of rebuttal only based on unexpected testimony by Plaintiffs' witnesses; or (2) were only recently discovered and whose discovery was not reasonably possible prior to the close of discovery."[5] Resp. Pls.' Mot. in Lim. 2. These two exceptions refer to: Rule 26(a)(1)(A)(i), which exempts a witness who would be used only for impeachment from the initial disclosure requirement; Rule 26(a)(3), which requires pretrial disclosure of witnesses and exhibits that may be used at trial but exempts witnesses and evidence that would be used solely for impeachment; and Rule 37(c), which provides that "[i]f a party fails to provide information or identify a witness as required by

---

[5] Although Plaintiffs' reply says that they address the County's response to motion nine, Reply Supp. Pls.' Mot. in Lim. 2 ("The remaining paragraph[] . . . 9 . . . [is] addressed individually."), the reply includes no discussion of motion nine, *see generally id.*

Rule 26 . . . the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless."

The Court finds it appropriate to GRANT IN PART Plaintiffs' motion nine to accurately reflect the law. Any evidence or testimony from witnesses not disclosed in compliance with Rules 26(a), 33, and 34 is BARRED. The Court finds it unnecessary to address whether the County could take advantage of the exception in Rule 37(c) because the County concedes that it has no witnesses that were not disclosed prior to trial. Resp. Pls.' Mot. in Lim. 2–3. The County can object at trial if circumstances change.

### ii.  Facts Not Known at the Relevant Time

### 1.  Plaintiffs' Motion Six

Plaintiffs' motion six seeks an order barring "[a]ny opinions or testimony from Dr. Asfour based on or regarding any studies or journal articles published after November 1, 2021." Pls.' Mot. in Lim. 4 (emphasis omitted). Plaintiffs rely on *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1152 (D. Or. 2024), as holding "that it is appropriate to confine the [undue hardship] analysis to the information available to the employer when it made its . . . decision." *See* Pls.' Mot. in Lim. 4–5. The County "disagrees with Plaintiffs' conception and application of their proposed rule." Resp. Pls.' Mot. in Lim. 3. The County concedes that federal courts apply the *Lavelle-Hayden* rule, but requests the Court reject this consensus because "there is no binding authority," and courts adopting the *Lavelle-Hayden* rule have not evaluated "whether the rule is proper." *Id.*

The Court is unconvinced by the County's response. That *Lavelle-Hayden*'s specific articulation of the prohibition has not been endorsed by the Seventh Circuit is somewhat beside the point—the *Lavelle-Hayden* rule explicitly draws support from a Seventh Circuit case, *Kluge*

*v. Brownsburg Community School Corporation*, 64 F.4th 861, 888 (7th Cir. 2023) (*Kluge I*).

*See Lavelle-Hayden*, 744 F. Supp. 3d at 1152 (quoting *Kluge I* and stating that "[a]lthough *Kluge [I]* was vacated and remanded following the Supreme Court's ruling in [*Groff v. DeJoy*, 600 U.S. 447 (2023)], this Court considers this aspect of the Seventh Circuit's decision to remain applicable and persuasive post-*Groff*"). *Kluge I* found that "[i]t is axiomatic that an employer can make decisions based only on the information known to it at the time of the decision" and that "[t]o suggest that the employer may be held liable for a decision to withdraw an accommodation based on information that did not exist at the time of the decision holds employers to an impossible 'crystal ball' standard." *Kluge*, 64 F.4th at 888. *Groff* clarified how much harm an employer must demonstrate to succeed on an undue hardship defense. *See Groff*, 600 U.S. at 469. The Court does not understand *Groff* to have addressed the question of whether an employer can rely on information that postdates the decision to deny an accommodation, so it finds the reasoning in *Kluge I* to be persuasive on this point, even though the opinion in *Kluge I* was withdrawn.

Although *Lavelle-Hayden* is not binding, it is a widely-adopted interpretation of a persuasive case. *See, e.g.*, *O'Hailpin v. Hawaiian Airlines, Inc.*, No. 22-00532 HG-WRP, 2025 WL 1543951, at *9–10 (D. Haw. May 30, 2025) (ruling that "[e]vidence in this case regarding COVID-19 [would be] limited to the relevant timeline of the announcement of the vaccination policy . . . through the denial of Plaintiffs' reasonable accommodations requests . . . and Plaintiff['s] . . . placement on leave without pay status" and, accordingly, ordering public records to be "modified to the relevant timeline" and limiting experts to relying on "information that was available regarding COVID-19" at the time, meaning they "[could not] rely on information, studies, articles, or evidence that was published after" the final adverse action was taken);

6

*Efimoff v. Port of Seattle*, No. 2:23-cv-01307-BAT, 2024 WL 4765161, at *9 (W.D. Wash. Nov. 13, 2024) ("Courts within the Ninth Circuit recognize that it is appropriate to confine the undue hardship analysis to the information available to the employer when it made its undue hardship decision." (quotation marks and alterations omitted)); *Luxton v. Wash. State Dep't of Veteran Affs.*, No. 3:23-cv-05238-DGE, 2025 WL 896658, at *16 (W.D. Wash. Mar. 24, 2025) (applying *Efimoff* to an expert's testimony which relied on sources published post-adverse action); *see also Vargas v. Asante Rogue Reg'l Med. Ctr., LLC*, No. 1:23-cv-1722-CL, 2026 WL 765664, at *2 n.1 (D.Or. Mar. 18, 2026) (quoting *Lavelle-Hayden*, 744 F. Supp. 3d at 1152).  Moreover, neither *Kluge I* nor *Lavelle-Hayden* were the first cases to find that undue hardship should be considered by relying on only information available to the employer at the time it made the adverse employment decision.  *See, e.g.*, *E.E.O.C. v. Oak-Rite Mfg. Corp.*, No. IP99-1962-C-H/G, 2001 WL 1168156, at *14 (S.D. Ind. Aug. 27, 2001); *Favero v. Huntsville Indep. Sch. Dist.*, 939 F. Supp. 1281, 1293 (S.D. Tex. 1981) ("Plaintiffs' emphasis on reviewing the situation in hindsight would allow employers to deny [Title VII accommodation] requests only when they were certain in advance that the requested [accommodation] would cause an undue hardship."), *aff'd*, 110 F.3d 793 (5th Cir. 1997).  As such, this Court applies the rule established throughout case law: evidence that did not exist at the time the employer made its decision may not be presented in support of the County's undue hardship argument.

Now the Court must determine to which documents this ruling applies.  Plaintiffs specifically identify three[6] of Dr. Asfour's opinions which they argue impermissibly rely on sources not available by November 1, 2021.  Pls.' Mot. in Lim. 5–6.  The first is Dr. Asfour's statement that "A meta-[]analysis with seven studies with 21,618,297 COVID-19 patients

---

[6] Plaintiffs list them as four options, but two of the statements rely on the same study, and so the Court consolidates its analysis of those statements.  The Court treats Plaintiffs' identification as if they identified three.

indicated that unvaccinated patients were 2.46 times more likely to die from COVID-19."

Asfour Rep. 5, ECF No. 45-40.  Here, Dr. Asfour relies on a study published on August 10, 2023.

*Id.* at 5 n.1.  Because this analysis combines data published "from 2020 to July 10, 2022 from the

United States," any reliance on this study to establish the County's undue hardship argument is

improper.  *See* Anderson E Ikeokwu et al., *Unveiling the Impact of COVID-19 Vaccines: A Meta-*

*Analysis of Survival Rates Among Patients in the United States Based on Vaccination Status*

(Aug. 10, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10492612/.

> Second, Plaintiffs identify the following statement:

> In a 2022 study . . . , [scientists] found that vaccinations prevented 14.4 million deaths from COVID-19 in 185 countries and territories between Dec 8, 2020, and Dec 8, 2021.  When the study authors used the the [sic] number of extra deaths recorded during the study period (excess deaths), the estimate of the numbers of deaths prevented from COVID-19 vaccination rose to 19.8 million representing a global reduction of 63% in total deaths (19.8 million of 31.4 million) during the first year of COVID-19 vaccination.[7]

Asfour Rep. 5.  As with the first statement, this study is based on information available prior to

November 1, 2021, inextricably combined with information not yet available.  *See* Oliver J

Watson et al., *Global impact of the first year of COVID-19 vaccination: a mathematical*

*modelling study* (June 23, 2022),[8] https://www.thelancet.com/journals/laninf/article/PIIS1473-

3099(22)00320-6/fulltext.  As such, any reliance on this study to establish the County's undue

hardship argument is improper.

The final statement Plaintiffs identify is: "'[v]accination slashed the attack rate of

COVID-19 in half,'" which they assert "was from a publication in December, 2021."  Pls.' Mot.

---

[7] Plaintiffs assert that Dr. Asfour got this statistic from a December 2021 publication, *see* Pls.' Mot. in Lim. 6; however, he cites to a 2022 study in support of this statistic in his report, *see* Asfour Rep. 5 n.3.  Because Plaintiffs have not directed the Court to where in the record these statements from Dr. Asfour appear, the Court has independently found the instances which it believes Plaintiffs to be discussing.
[8] The article was updated on September 5, 2023, to correct a label on a table.

in Lim. 5. Although Plaintiffs' quotation is unclear, it seems that they are referring to Dr. Asfour's statement that "[a] modeling study showed that vaccination reduced the overall attack rate to 4.6% . . . from 9.0% . . . without vaccination, over 300 days. The highest relative reduction (54–62%) was observed among individuals aged 65 and older. Vaccination markedly reduced adverse outcomes, with non-ICU hospitalizations, ICU hospitalizations, and deaths decreasing by 63.5%." Asfour Rep. 5. While it is true that this study was published December 2021, it was preprinted January 2021. *See* Seyed M. Moghadas et al., *The impact of vaccination on COVID-19 outbreaks in the United States* (Dec. 16, 2021) https://pubmed.ncbi.nlm.nih.gov/33269359/. Because the article was available by November 2021, any reliance on this article and its findings is proper. *See NIH Preprint Pilot*, National Library of Medicine, https://pmc.ncbi.nlm.nih.gov/about/nihpreprints/ (explaining that preprints are publicly-accessible early publications of research intended to encourage people "to use interim research products . . . to speed the dissemination and enhance the rigor of their work.").

Plaintiffs' motion six is GRANTED IN PART and DENIED IN PART. Dr. Asfour's discussion of Seyed M. Moghadas's study, *The impact of vaccination on COVID-19 outbreaks in the United States*, is admissible. The remaining two statements identified by Plaintiffs are barred, as is any reliance upon the two studies which Dr. Asfour cites in support.

### 2. Plaintiffs' Motion Seven

Plaintiffs' motion seven similarly seeks an order barring admission of the County's exhibits thirteen and fifteen as "irrelevant" because they postdate Plaintiff's termination. Pls.' Mot. in Lim. 6. The County concedes that exhibit fifteen, a January 2023 COVID-19 report from the Centers for Disease Control and Prevention, "does not satisfy the relevance test" and so exhibit fifteen is barred. Resp. 7. Exhibit thirteen provides an update on how many Rock Island

County cases, hospitalizations, and deaths occurred in the County as of November 8, 2021. *See* Nov. 8, 2021 RICHD COVID-19 Rep., ECF No. 54-14. It is impossible to separate which of these infections, hospitalizations, and deaths occurred on or before November 1, 2021, and which occurred after. As such, exhibit thirteen is inadmissible and Plaintiffs' motion seven is GRANTED.

### 3. County's Motion Four

The County's motion four seeks an order barring evidence of any religious beliefs which Plaintiffs did not share with the County prior to their termination. Cnty.'s Mot. in Lim. 5. The County argues that the presentation of religious beliefs which were not included in communications about Plaintiffs' vaccine objections "were not fairly presented for the employer's consideration prior to the decision to deny Plaintiffs' accommodation requests" and so "those unpresented beliefs cannot serve as the basis for a finding that the employer failed to accommodate those beliefs." *Id.* Plaintiffs indicate that "they have no intention of essentially 'adding' new religious beliefs" but argue that they "must be allowed to explain and substantiate the beliefs reflected in their respective written submissions." Resp. Cnty.'s Mot. in Lim. 2 (emphasis omitted). In reply, the County agrees that Plaintiffs "have the right to explain the beliefs they actually presented to the employer before the employer's decision not to accommodate." Reply Supp. Cnty.'s Mot. in Lim. 2, ECF No. 74-1. The parties make many other arguments, but none are precisely relevant to the question at hand, which is apparently unopposed. Accordingly, the Court GRANTS the County's motion four. Plaintiffs may not testify as to religious objections to vaccinations that were not presented to the County.

### iii.  Speculative Testimony

#### 1.  County's Motion Six

The County's motion six seeks an order barring Plaintiffs from presenting any expert evidence or testimony about medical causation.  Cnty.'s Mot. in Lim. 7.  Based on Plaintiffs' discovery disclosures, the County believes Plaintiffs are likely to testify to various physical maladies caused by the stress of their terminations, such as ulcers and insomnia, which the County argues constitutes a medical conclusion requiring expert testimony.  *Id.* (arguing that "[t]his is not a direct, physical injury case where causation can be established simply by universal human experience").  Plaintiffs "do not contest, but with the qualification that they can certainly testify as to how their terminations subjectively made them feel."  Resp. Cnty.'s Mot. in Lim. 4.  The County agrees with Plaintiffs' contention, but "with two exceptions."  Reply Supp. Cnty.'s Mot. in Lim. 5.  The County argues that Plaintiffs should only be permitted to testify to their subjective feelings about the termination "so long as the emotion was an immediate consequence" because "the further in time [from the termination] . . . , the more thin and attenuated the chain of causation becomes."  *Id.*  Second, the County argues that "the subject of 'stress' is far too complex to be discussed in sufficient depth without the aid of expert evidence," pointing to the textbook definition of stress and a diagnostic manual of stressor-related disorders.  *Id.*

It is well-established that a plaintiff may seek compensatory damages for a violation of Title VII and may in the process testify to her mental health struggles and subjective feelings. *See, e.g.*, *Williams v. Pharmacia Opthalmics, Inc.*, 926 F. Supp. 791, 794 (N.D. Ind. 1996); *Musser v. Colonnade Senior Dev., LLC*, No. 3:24-CV-02045-NJR, 2025 WL 2390544, at *2 (S.D. Ill. Aug. 18, 2025).  At this time, the Court declines to adopt the County's caveats for two

reasons.  First, the County does not provide any support for its assertion that an increase in time from Plaintiffs' termination makes the subjective feelings more complicated such that they require expert testimony.  What that time may do, however, is weaken the persuasiveness of Plaintiffs' testimony.  And that goes to the weight of the evidence, not its admissibility.  Second, while the Court recognizes that "stress" can mean many different things, including, as the County points out, stressor-related disorders, *see* Reply Supp. Cnty.'s Mot. in Lim. 5, that does not mean that a lay person cannot testify to subjective feelings of stress.  Stress is a widely acknowledged emotion, just like sadness, anger, or happiness.  So long as Plaintiffs do not testify to specific stress-related diagnoses, the Court sees no reason to bar Plaintiffs from testifying about a subjective feeling of stress.  *See, e.g.*, *Márquez-Marín v. Garland*, No. 3:16-cv-01706-JAW, 2021 WL 3557695, at *3 (D.P.R. Aug. 11, 2021) (holding that an expert is not required for a plaintiff to testify that the defendant's actions caused the plaintiff stress, but that "evidence that the stress caused or exacerbated [the plaintiff's] cancer, shoulder injury, and other ailments does require expert testimony").  As such, the County's motion six is GRANTED insofar as Plaintiffs may not offer an opinion as to medical causation; however, Plaintiffs are permitted to testify as to their subjective feelings of the events in question.

### 2.  County's Motion Seven

The County's motion seven seeks an order barring Plaintiffs from testifying about "physical maladies" suffered because of psychological injuries during their terminations.  Cnty.'s Mot. in Lim. 9.  Plaintiffs do not contest this motion, again with qualifications.  Resp. Cnty.'s Mot. in Lim. 6.  Although they "concede that they will not testify to certain physical manifestations identified" in their interrogatories,[9] Plaintiffs assert that "testimony regarding

---

[9] Specifically, Plaintiffs agree to not testify about Allen's "suspected ulcer"; Brumbaugh's gastrointestinal issues, her heartburn and headaches resulting "from anxiety of returning to work," and that her headaches affected her vision;

12

such garden variety compensatory damages elements such as suffering headaches, stress, anxiety and lack of sleep, are in no way physical manifestations of psychological injuries requiring any expert medical opinions." *Id.* (quotation marks omitted). The County agrees that testimony regarding anxiety and lack of sleep are allowable, "[s]o long as the testimony is phrased specifically to avoid rendering a causation opinion." Reply Supp. Cnty.'s Mot. in Lim. 6. Nevertheless, the County maintains that headaches are a specific physical symptom and therefore inadmissible without expert testimony.[10] *Id.* Once again, the County has provided no support for its assertion that a lay witness lacks sufficient specialized knowledge to testify to having a headache and, because the County bears the burden, *Angelopoulos*, 2017 WL 2178504, at *11, the Court declines to prohibit witnesses from testifying that they had headaches. The County's motion seven, however, is GRANTED insofar as it bars Plaintiffs from testifying that they had any specific medical conditions.

### 3. County's Motion Fourteen

The County's motion fourteen seeks an order barring Rebecca Fryxell and Jolene Ramsey-Moody from testifying to their knowledge of Brumbaugh's difficulties after losing her job, including "how she appeared to be 'off,' sullen, and different." Cnty.'s Mot. in Lim. 18. The County argues that this testimony violates Federal Rule of Evidence 701's limit on lay opinion testimony because it "involve[s] conclusions about mental health and emotional functioning subjects that fall within the province of expert testimony under Rule 702." *Id.* Other than Rule 701, the County cites no law in support of this argument.

---

and Sanchez's late menstrual cycle because of stress from her termination. Resp. Cnty.'s Mot. in Lim. 6 (quotation marks omitted).

[10] The County also re-asserts its arguments against allowing Plaintiffs to testify to "stress" as discussed in its motion six. Reply Supp. Cnty.'s Mot. in Lim. 6. The Court again rejects this argument.

In response, Plaintiffs assert that these are "simple perceptions or observations to which a close friend . . . should be allowed to testify," and that "they should be allowed to testify that these observations were a change from before the time of the termination, thus allowing the inference to be drawn that the termination and the distress or anguish are connected." Resp. Cnty.'s Mot. in Lim. 18 (quotation marks omitted). In its reply, the County clarified that it does not object to "testimony that a Plaintiff cried or cancelled plans more frequently." Reply Supp. Cnty.'s Mot. in Lim 14. Instead, it argues that "testimony that a Plaintiff was sad, or stressed, or 'seemed off' amounts to speculation and impermissible lay opinion testimony." *Id.* The Court agrees with Plaintiffs—lay witnesses can testify as to a noticeable change in demeanor or emotion of a plaintiff so long as they do not testify to medical diagnoses. It is not speculative, nor does it require expert testimony, to testify that someone "seemed off" or was sad so long as the testimony does not include causation or diagnoses. *See id.* at *7–8. For these reasons, the County's motion fourteen is DENIED.

### 4. County's Motion Fifteen

The County's motion fifteen similarly seeks an order barring Gale Allen's anticipated testimony regarding Allen's "difficulty adjusting to the loss of employment, [and] her changes in demeanor." Cnty.'s Mot. in Lim. 20. Although the County presents slightly different arguments than it did in its motion fourteen—it argues that this testimony exceeds the witness's personal knowledge, but essentially this is just a repackaged argument that the testimony is speculative because a witness cannot know what a plaintiff felt inside—the County's motion fifteen is DENIED for the same reasons.

### 5. County's Motion Nineteen

The County's motion nineteen seeks an order barring "speculation about the Governor [of Illinois's] knowledge, opinions, perception, and motives" when issuing the executive order. Cnty.'s Mot. in Lim. 26.  The County points to a line of questioning used when deposing Dr. Asfour, asking questions such as:

> And in this instance the Governor of the State of Illinois with all of his advisers made a determination that public health would be sufficiently protected if religious exemptions were given under certain circumstances and people followed through with other precaution risk reduction techniques?
> Do you understand that to be what happened in the State of Illinois?

*Id.*  Plaintiffs clearly contest this motion, but it is unclear on what grounds.  First, Plaintiffs argue that they "can point to the language of . . . [the] Executive Order without speculating as to his state of mind." Resp. Cnty.'s Mot. in Lim. 20–21 (quotation marks omitted).  They later state that they "agree that the executive order should and does speak for itself," and that the County's acknowledgement that the Executive Order can be presented at trial "resolves the issue." *Id.* at 21 (emphasis omitted).  But then Plaintiffs argue that the line of questioning the County quotes is proper because "[i]t is simply confirmation of what the Governor determined as reflected in his executive order." *Id.*  The Court agrees with the County, though, that this line of questioning extends beyond the scope of what is actually written in the Executive Order.  The Governor's thought process, intentions, or drafting process with the Executive Order are entirely irrelevant to this case and, in any case, the witnesses in this case lack sufficient personal knowledge to testify as to the Governor's thoughts and actions.  As such, the County's motion nineteen is GRANTED.

### iv. Judicial Notice of Facts: County's Motion Twelve and Plaintiffs'
### Motions Twelve & Thirteen

The County's motion twelve requests the Court take judicial notice of several facts. Cnty.'s Mot. in Lim. 14–15. The County had submitted a proposed jury instruction on judicial notice listing the same facts. *See* Cnty.'s Proposed Jury Instr. 1, Joint Proposed Pretrial Order Ex. 9, ECF No. 65-9. Plaintiffs' motion thirteen, which was filed before the County filed its motions *in limine* and referred to the judicial notice jury instruction, requested that the Court decline to take judicial notice of three of the facts the County listed because those facts "are irrelevant and highly prejudicial to Plaintiffs." *See* Pls.' Mot. in Lim. 10–11.[11] One of the facts the County asks the Court to take judicial notice of is a statement by Pope Francis. Plaintiffs' motion twelve requests the Court "reject" that fact and bar "any argument regarding or reference to an alleged 'official' position of any religion, sect, or denomination." *Id.* at 9–10. The Court considers these motions together.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). Rule 201 "applies only to adjudicative facts, which are simply the facts of the particular case or, stated differently, those to which the law is applied in the process of adjudication." *United States v. Arroyo*, 310 F. App'x 928, 929 (7th Cir.

---

[11] Plaintiffs' motion thirteen objects to one fact that Plaintiffs indicate in their response to the County's motion they are not contesting—that "[t]he COVID-19 pandemic required many businesses to temporarily shut down, put many people out of work, and forced the world to adapt to new ways of conducting business." *Compare* Pls.' Mot. in Lim. 10–11, *with* Resp. Cnty.'s Mot. in Lim. 12. Because the response was more recent, the Court treats the County's request to take judicial notice of that fact as undisputed.

16

2009) (quotation marks omitted).  A fact is not adjudicative and therefore not noticeable under Rule 201 "if it is one of common knowledge ('we all know that'), or it pertains to public policy or legislative intent in interpreting a statute ('legislative facts'), or it involves notice of applicable law."  21B Wright & Miller's Federal Practice & Procedure § 5103 (2d. ed. 2026) ("In applying Rule 201, then, [courts] must distinguish among (1) adjudicative facts generally, (2) the very narrow domain of indisputable adjudicative facts that qualify under Rule 201, and (3) the 'non-evidence facts' that [people] use to navigate daily life (common sense).").  "In a civil case, the court must instruct the jury to accept the noticed fact as conclusive."  Fed. R. Evid. 201(f).  As such, "[j]udicial notice is a powerful tool that must be used with caution."  *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("[C]ourts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts.").  As such, "[a] high degree of indisputability is [an] essential prerequisite" of Rule 201.  *Berry Plastics Corp. v. Intertape Polymer Corp.*, No. 3:10-cv-00076-RLY-WGH, 2015 WL 8131080, at *1 (S.D. Ind. Dec. 4, 2015) (first alteration in original) (quoting Fed. R. Evid. 201 advisory committee's note to 1972 Proposed Rules).

Notably, Rule 201 "does not operate in a vacuum, meaning that it does not operate as a magic wand that cures inadmissibility" under other rules of evidence.  *Buntain v. Hansbro*, No. 21-1078-CSB-EIL, 2024 WL 3312040, at *7 (C.D. Ill. Feb. 16, 2024) (quotation marks omitted).  Rules regulating admissibility and relevance may still bar presentation of judicially-noticeable facts at trial.  *Id.*; *see also* 21B Wright & Miller's Federal Practice & Procedure § 5103.1 (2d. ed. 2026).  For this reason, the Court will first consider the relevance of each proposed fact before

17

then determining whether a relevant fact qualifies as a judicially-noticeable adjudicative fact under Rule 201.

Evidence is considered relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. And Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury."

The facts the County requests judicial notice of are:

A. The COVID-19 pandemic began in early 2020.
B. The COVID-19 pandemic presented a public health emergency across the United States of America generally and within the State of Illinois specifically.
C. The COVID-19 pandemic required many businesses to temporarily shut down, put many people out of work, and forced the world to adapt to new ways of conducting business.
D. This Court had to suspend public access to most of its courthouses, limit the amount of staff working at those courthouses, and continue many scheduled hearings for several months.
E. In the fall of 2021, the COVID-19 pandemic was still ongoing and actively increasing in severity.
F. During the winter of 2021 into 2022, more COVID-19 infections and corresponding deaths occurred than at any other point during the course of the pandemic.
G. At the times relevant to the events of this case, though this Court had reopened its courthouses to the public, face coverings were required for entry to the courthouse and routine matters continued to be scheduled by video conference when possible.
H. In January of 2021, and throughout the year, Pope Francis encouraged those who held the Catholic faith to be vaccinated against COVID-19, calling doing so an "act of love" and a moral obligation of the faithful.
I. Throughout 2021, COVID-19 vaccines were not required to board a domestic flight within the United States.

Cnty.'s Mot. in Lim. 14–15. The County concedes that fact F is irrelevant and so withdraws its request. Reply Supp. Cnty.'s Mot. in Lim. 9. Plaintiffs do not contest the Court taking judicial notice of facts A, B, or C, *see* Resp. Cnty.'s Mot. in Lim. 11–12, and so the Court will take

18

judicial notice of them.  The Court will discuss the relevance and, if appropriate, the noticeability of contested facts D, E, G, H, and I in turn.

### 1.  Proposed Fact D

Proposed fact D states: "This Court had to suspend public access to most of its courthouses, limit the amount of staff working at those courthouses, and continue many scheduled hearings for several months."  Cnty.'s Mot. in Lim. 14.  Plaintiffs argue that "it is entirely irrelevant what 'this Court' did during the pandemic, and prejudicial to Plaintiffs to cast them in a negative light vis-à-vis 'this Court' itself."  Resp. Cnty.'s Mot. in Lim. 12; Pls.' Mot. in Lim. 10–11.  The County argues that this fact is "illustrative" of how "the pandemic was active and ongoing—a real threat, not a far-off hypothetical concern" at the time, and suggests that "[a] reminder to the jurors of the severity of the COVID-19 pandemic is a necessary component of proving that Defendant would have experienced hardship in accommodating Plaintiffs' professed beliefs at all," meaning its probative value outweighs any prejudice.  Resp. Pls.' Mot. in Lim. 9–10.[12]  While the Court understands the County's intention of highlighting the severity of the COVID-19 pandemic, it does not see how this Court's COVID-19 safety precautions are relevant.  Nothing about this Court is at issue in this case and it does very little— if anything at all—to demonstrate the severity of COVID-19 itself.  As such, the Court declines to take judicial notice of proposed fact D.

### 2.  Proposed Fact E

Proposed fact E states: "In the fall of 2021, the COVID-19 pandemic was still ongoing and actively increasing in severity."  Cnty.'s Mot. in Lim. 14.  Plaintiffs do not contest the relevance of fact E, arguing instead that this is neither "generally known" nor "indisputable" as

---

[12] The County does not raise any new arguments supporting fact D in its reply, rather, it incorporates its response to Plaintiffs' motion in limine thirteen.  *See* Reply Supp. Cnty.'s Mot. in Lim. 9.

required for judicial noticeability under Rule 201.  Resp. Cnty.'s Mot. in Lim. 12–13.  After reviewing Plaintiffs' response, the County withdrew proposed fact E, "mov[ing] in its place for judicial notice of the fact that the pandemic was ongoing at that time."  Reply Supp. Cnty.'s Mot. in Lim. 9.  The proposed alternate fact states: "In the fall of 2021, the COVID-19 pandemic was still ongoing."  *Id.*  The County supports this by asserting that "Plaintiffs have not expressed any opposition to that fact in their response brief, and . . . it is a generally known fact in [the] community not subject to reasonable dispute."  *Id.*  Though a footnote in Plaintiffs' response focuses on whether the severity of COVID-19 was increasing, Resp. Cnty's Mot. in Lim. 13 n.2, they explicitly argue that the entire proposed fact E is "is not an indisputable fact," *id.* at 13.  Because Plaintiffs have not had an opportunity to respond to the County's newly proposed fact E, the Court declines to take judicial notice of this fact.  If the County still wants to move for judicial notice of its new fact E, the County should file a motion such that Plaintiffs are afforded an opportunity to respond.

### 3.  Proposed Fact G

Proposed fact G states: "At the times relevant to the events of this case, though this Court had reopened its courthouses to the public, face coverings were required for entry to the courthouse and routine matters continued to be scheduled by video conference when possible."  Cnty.'s Mot. in Lim. 15.  As with fact D, the Court finds that COVID-19 safety precautions taken by this Court are not relevant or probative of the pandemic's severity.  The Court declines to take judicial notice of fact G.

### 4.  Proposed Fact H

Proposed fact H states: "In January of 2021, and throughout the year, Pope Francis encouraged those who held the Catholic faith to be vaccinated against COVID-19, calling doing

20

so an 'act of love' and a moral obligation of the faithful." Cnty.'s Mot. in Lim. 15. Plaintiffs argue that this fact is both irrelevant and unfairly prejudicial. Resp. Cnty.'s Mot. in Lim. 14–15. Plaintiffs raise the same objection to the proposed fact in their motion in limine twelve as part of broader request seeking an order barring "[a]ny argument regarding or reference to an alleged 'official' position of any religion, sect, or denomination." Pls.' Mot. in Lim. 9.

Plaintiffs rely on *Gardner-Alfred v. Federal Reserve Bank of New York*, 143 F.4th 51, 65 (2d Cir. 2025). Pls.' Mot. in Lim. 9–10. While *Gardner-Alfred* states that it "does not matter whether [the plaintiff's] views align with the dogma articulated by a particular representative of Catholicism; what matters is that she believed that receiving the Covid-19 vaccine would be inconsistent with the teachings of the Catholic Church," *Gardner-Alfred*, 143 F.4th at 65, it ultimately holds that the trial court improperly granted summary judgment because genuine disputes of material fact remained, *id.* ("Overall then, the evidence that the district court relied upon to grant summary judgment to the [defendant], at best, impeaches the credibility of [the plaintiff's] testimony about the sincerity of her religious opposition to the Covid-19 vaccines."). As the County points out, *see* Resp. Pls.' Mot. in Lim. 7–9, nothing in *Gardner-Alfred* indicates that consideration of traditional beliefs of a particular religious sect is improper, irrelevant, or unduly prejudicial. Instead, it establishes that such evidence can create a genuine dispute of material fact precluding summary judgment. The presentation of evidence about Catholic teachings is relevant to Sanchez's claim—she identified that at least some of her beliefs arise out of her Catholic upbringing and she stated that she still aligns with many (although not all) of the Catholic tenants. *See* Sanchez Suppl. Statement, Pls.' Mot. Summ. J. Ex. 22, ECF No. 48-1 at 29. As such, evidence about certain Catholic teachings could make the sincerity and religiosity of Sanchez's objection to the vaccine more or less probable than if the jury did not have any

21

evidence about Catholic teachings, and the sincerity and religiosity of Sanchez's objection is certainly consequential to the action. Thus, the evidence is relevant under Rule 401. To the extent that this was not a tenet of Sanchez's belief system, she will have an opportunity at trial to clarify that this was not a belief to which she adhered.

In any case, Plaintiffs argue that the presentation of evidence about Catholic or other denomination-specific teachings (and fact H) should be barred under Rule 403 because it would be unduly prejudicial "to this one Plaintiff," confuse the issues, and mislead the jury. Reply Supp. Pls.' Mot. in Lim. 6–7. That the doctrine of a religious sect is only an issue for Sanchez does not create undue prejudice—each Plaintiff will need to convince the jury that her objections to the COVID-19 vaccine were sincerely held religious beliefs, and, because each Plaintiff holds distinct beliefs from one another, each will need to utilize unique methods for convincing the jury. The Court is unconvinced that allowing evidence of relevant Catholic teachings would unfairly prejudice Sanchez such that this relevant evidence should be excluded. And there is minimal risk of misleading the jury or confusing the issues because presenting evidence of traditional Catholic beliefs is directly relevant to a jury's evaluation of the sincerity and religiosity of Sanchez's beliefs. For these reasons, Plaintiffs' motion twelve is DENIED.

Having determined that fact H is relevant, the Court now considers whether it is a judicially-noticeable adjudicative fact under Rule 201. The County asserts that this fact is "[n]oticeable per Rule 201(b)(2) as coming from source [sic] that cannot be reasonably questioned." Cnty.'s Mot. in Lim. 15 n.9. The County then cites to publications from the *Vatican News*, *The Associated Press*, *NPR*, and a scholarly article. *Id.* *Vatican News* "is the news portal of the Holy See." *About Us*, Vatican News (last accessed May 8, 2026), https://www.vaticannews.va/en/about-us.html ("Vatican News's adventure began on 27 June

22

2015 with the Motu Proprio of Pope Francis that established the Secretariat for

Communication. . . .").  As such, the Court is satisfied that the *Vatican News* article is a "source[]

whose accuracy cannot reasonably be questioned" when considering the Catholic Church's

position on vaccination.  Fed. R. Evid. 201(b)(2); *see, e.g.*, 21B Wright & Miller's Federal

Practice & Procedure § 5104 (2d ed. 2026) ("[I]ndisputability requires more than just an

objection to vaporize it.").  Published on August 18, 2021, the article states that Pope Francis

said that "[v]accination is an act of love," specifically encouraging people to get the COVID-19

vaccination.  Devin Watkins, *Pope Francis urges people to get vaccinated against Covid-19*,

Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-08/pope-

francis-appeal-covid-19-vaccines-act-of-love.html ("Pope Francis launches a powerful appeal for

people to get vaccinated with approved Covid-19 vaccines, calling it 'an act of love.'").

However, the scholarly article and publications from *The Associated Press* and *NPR* are

not "sources whose accuracy cannot reasonably be questioned" when considering the Catholic

Church's position on vaccination.  Fed. R. Evid. 201(b)(2); *cf. Staehr v. Hartford Fin. Servs.

Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The materials [that were judicially noticed] were

offered to show that certain things were said in the press, and that assertions were made . . .

which is all that is required to trigger inquiry notice.  None of those materials were offered for

the truth of the matter asserted.").  For this reason, the Court will only take judicial notice of

information provided in the *Vatican News* article, and proposed fact H must be altered to ensure

it reflects only the information provided in the *Vatican News*.  The *Vatican News* article does not

mention January 2021, nor does it describe any type of "moral obligation of the faithful."

As such, the Court will take judicial notice of the following, altered version of proposed fact H: "In August 2021, Pope Francis encouraged those who held the Catholic faith to be vaccinated against COVID-19, calling doing so 'an act of love.'"

### 5.    Proposed Fact I

Proposed fact I states: "Throughout 2021, COVID-19 vaccines were not required to board a domestic flight within the United States."  Cnty.'s Mot. in Lim. 15.  Plaintiffs argue only that this fact is not generally known or indisputable, and that the County does not provide a reliable source in support of this fact.  Resp. Cnty.'s Mot. in Lim. 15–16.  As such, the Court treats fact I as relevant and focuses its analysis on whether it is judicially noticeable under Rule 201.

The County asserts that this fact is "[n]oticeable per Rule 201(b)(1) as generally known." Cnty.'s Mot. in Lim. 15 n.10.  The Court agrees with Plaintiffs that this is not a generally known fact.  In reply, the County provides four separate sources explaining that domestic flights do not require vaccination, *see* Reply Supp. Cnty.'s Mot. in Lim. 10–11, but these sources do not meet Rule 201(b)(2)'s standards.  Although the U.S. Department of State and Transportation Security Administration are "sources whose accuracy cannot reasonably be questioned," they do not "accurately and readily" support fact I.  Fed. R. Evid. 201(b)(2).  The press releases do not address domestic flights and so cannot support a fact that domestic flights did not require vaccination.  Ned Price, *Updates on U.S. Travel Policy Requiring Vaccination*, U.S. Dep't of State (Oct. 25, 2021), https://2021-2025.state.gov/updates-on-u-s-travel-policy-requiring-vaccination/ (describing a new vaccination policy "for international travelers"); *Statement regarding vaccination requirements for noncitizen nonimmigrant air travelers entering the United States*, Transp. Sec. Admin. (Nov. 5, 2021),

24

https://www.tsa.gov/news/press/statements/2021/11/05/statement-regarding-vaccination-requirements-for-noncitizen (same). And the other two sources are third party interpretations of the proclamation which triggered the Department of State and TSA notices, which do not qualify as "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *cf. Staehr*, 547 F.3d at 425. Moreover, the County quotes the UCHealth publication for its statement that "COVID-19 vaccination is *generally* not required to board domestic flights," which does not "accurately and readily" support the County's proposed fact that vaccinations were not required at all. *See* Reply Supp. Mot. in Lim. 10–11 (emphasis added). For these reasons, the Court declines to take judicial notice of fact I.

### 6.   Conclusion

The County's motion twelve is GRANTED IN PART and DENIED IN PART. Proposed facts A, B, and C are accepted as judicially noticeable, as well as the following altered version of proposed fact H: "In August 2021, Pope Francis encouraged those who held the Catholic faith to be vaccinated against COVID-19, calling doing so 'an act of love.'" Plaintiffs' motion twelve is DENIED and motion thirteen is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion thirteen's objection to fact C is denied because, as discussed, Plaintiffs later state they do not contest that fact.

### v.   Judicial Notice of an Exhibit: County's Motion Thirteen

The County's motion thirteen requests the Court take judicial notice of exhibit fourteen, which is a "printout of data hosted on the Illinois Department of Public Health's website in October of 2023." Cnty.'s Mot. in Lim. 16. The County requests admission of exhibit fourteen for two reasons: "(1) as substantial evidence of the course of the COVID-19 pandemic as it affected specifically Rock Island County; and (2) as an 'illustrative aid,' within the meaning of

25

Federal Rule of Evidence 107, to assist the jury in visualizing where in the COVID-19 pandemic the events of this case took place." *Id.*  Plaintiffs raise several objections to this motion, including that it presents information not available to the County at the time of their termination. *See* Resp. Cnty.'s Mot. in Lim. 17.  While true that the exhibit includes data post-dating November 1, 2021, each of the charts specifically labels October 2021.  *See* Exhibit 14 2–4, Cnty.'s Mot. in Lim. Ex. 1, ECF No. 71-1.  And the methodology section indicates that the metrics were "updated weekly, based on the previous week." *Id.* at 4.  The Court is satisfied that the data through October 2021[13] depicted in exhibit fourteen was available to the County when it terminated Plaintiffs; however, it agrees with Plaintiffs that information post-dating the October 2021 data point should be excluded.

Moreover, exhibit fourteen is relevant because it depicts COVID-19 information in Rock Island County spanning from July 2020 through October 2021.  *See* Exhibit 14.  Exhibit fourteen presents facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Gilsinger v. Cities & Vills. Mut. Ins. Co.*, 693 F. Supp. 3d 975, 987 n.3 (E.D. Wis. 2023) ("The Court may take judicial notice of public record information obtained from an official government website." (alteration and quotation marks omitted) (collecting cases)).  And because exhibit fourteen was issued by a public authority (Illinois Department of Public Health), it is self-authenticating.  Fed. R. Evid. 902(5).

Plaintiffs argue that "by its own admission, [the County] fails to meet the exacting standards of Rule 201 and this Court should decline to take judicial notice of either proposed

---

[13] Because Plaintiffs were terminated on November 1, 2021, and the charts do not label any data points between October 2021 and January 2022, the Court finds that it is fair to restrict consideration of exhibit fourteen through October 2021.

Exhibit 14." Resp. Cnty.'s Mot. in Lim. 17.  However, Plaintiffs' 201 argument focuses entirely on the alternative exhibit fourteen and raises issues not present with exhibit fourteen (such as the inclusion of data from counties other than Rock Island County), which the County stated it would prefer not to use.  *See id.* at 16–17.  And unlike Plaintiffs' quoted case, nothing about the contents of exhibit fourteen is the subject of debate.  *See id.* (quoting *Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344, 1354–55 (7th Cir. 1995)).  Rather, the entire dispute surrounds its admissibility—if the exhibit is relevant, noticeable, and authentic.  And, as the Court already explained, it is satisfied that exhibit fourteen is relevant, noticeable, and authentic.  For these reasons, the County's motion thirteen is GRANTED IN PART and DENIED IN PART.  The Court will take judicial notice of exhibit fourteen through October 2021 as (1) evidence of the COVID-19 pandemic in Rock Island County and (2) an illustrative aid to assist the jurors in understanding at what stage of the pandemic the events in question transpired.  The County is DIRECTED to prepare an alternate exhibit fourteen omitting all data after October 2021.

### vi. Ludwig's Assessment of Religiosity and Sincerity: County's Motion Five

The County's motion five seeks an order barring evidence that Nita Ludwig did not question the sincerity or religiosity of Plaintiffs' professed beliefs.  Cnty.'s Mot. in Lim. 6.  Plaintiffs "strenuously contest" this motion, arguing that Ludwig's testimony that she never made a judgment about the sincerity of Plaintiffs' religious beliefs is highly relevant.  Resp. Cnty.'s Mot. in Lim. 3–4.  Plaintiffs' *prima facie* case requires they establish that their beliefs are both religious and sincerely held.  *Kluge*, 150 F.4th at 811.  The employer's subjective state of mind about the religiosity or sincerity of Plaintiffs' professed beliefs is irrelevant to and distinct

27

from what Plaintiffs' need to establish for their claim under Title VII.  Because evidence of Ludwig's non-opinion on the sincerity or religiosity of Plaintiffs' beliefs is irrelevant, the Court GRANTS the County's motion five.

### vii.  Political Affiliation: Plaintiffs' Motion Sixteen

Plaintiffs' motion sixteen seeks an order barring "[a]ny questioning of any Plaintiff as to her political affiliation or voting history."  Pls.' Mot. in Lim. 12.  Because all Plaintiffs are currently employed by the County, they argue that "any alleged relevance of this line of inquiry is far outweighed by the unfair prejudice to and the privacy interests of Plaintiffs, as well as First and Fourteenth Amendment concerns."  *Id.*  They also argue this questioning would violate the Illinois Personnel Record Review Act ("IPRRA").  *Id.*  At the outset, the Court notes that Plaintiffs' motion is prohibitively unclear.  At points, they request the Court prohibit questioning of political *affiliations* and voting history, which suggests their objection is cabined to party identifications or candidates whom Plaintiffs support.  *See* Pls.' Mot. in Lim. 12.  Alternatively, in their reply, Plaintiffs discuss political *beliefs*, which suggests their objection is not about parties or candidates and instead about principles.  *See* Reply Supp. Pls.' Mot. in Lim. 8–10 (arguing, for instance, that "Plaintiffs' political beliefs are not automatically relevant").  Because this ambiguity raises significant questions about what exactly Plaintiffs are seeking, the Court will not grant Plaintiffs' motion sixteen.  *See, e.g.*, *Angelopoulos*, 2017 WL 2178504, at *11.

Furthermore, the relevant section of the IPRRA, 820 ILCS 40/9, is sparsely cited and the Court can find no precedent for applying this statute in the manner which Plaintiffs request.  *See, e.g.*, *Harrison v. Deere & Co.*, 16 N.E.3d 841 (Ill. App. Ct. 2014) (citing IPRRA for protection of employment paperwork); *Robinson v. Stanley*, 474 F. App'x 456 (7th Cir. 2012) (same).  Although Plaintiffs are correct that the IPRRA prohibits an employer from "gather[ing] or

28

keep[ing] a record of an employee's associations, political activities, publications, communications or nonemployment activities" without employee consent, the statute includes exceptions, clearly indicating that the Illinois Legislature did not intend for the statute to act as a blanket prohibition.  820 ILCS 40/9.  And regardless, this is not a challenge to an employer keeping or gathering records, it is about an employer asking Plaintiffs questions at trial about their beliefs.   As such, Plaintiffs have not persuaded the Court that the IPPRA supports barring any questioning of Plaintiffs' political affiliations or beliefs.

Moreover, this Court already established that Plaintiffs' constitutional rights are not "so broad as to allow them to refuse to answer questions about what groups they belong to if that information is relevant to resolution of their claims."  Jan. 22, 2026 Order 12, ECF No. 61. "When [a plaintiff's] associational activities are *directly relevant* to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the lawsuit," the First and Fourteenth Amendments do not prohibit the presentation of such information.  *Grandbouche v. Clancy*, 825 F.2d 1463, 1467 (10th Cir. 1987)  (quotation marks omitted).  Plaintiffs have not shown that evidence of their political beliefs is clearly inadmissible for any purpose, *see Jonasson*, 115 F.3d at 440, and so their motion sixteen is DENIED.

### viii.   Undue Hardship: County's Motion Eleven

The County's motion eleven is titled: "Motion to Bar Evidence or Argument about Defendant 'Changing Its Story' or Similar Positions with Respect to Defendant's Undue Hardship Defense."  Cnty.'s Mot. in Lim. 13.  It asks the Court to "prohibit any reference, evidence or argument that [the County] is 'changing its story'" because of relevance and prejudice concerns.  *Id.*  The Court agrees with the County—evidence of the County "changing its story" is not relevant and, even if it were, would pose a serious risk of confusing the jury.

The undue hardship question in this case is not whether the County accurately told Plaintiffs of its reason for their terminations; rather, the question is whether any reasonable accommodation was available to the County which would not have imposed an undue hardship upon it.  Plaintiffs have not demonstrated how this pretext-like argument is relevant to the question of whether allowing Plaintiffs to abstain from the COVID-19 vaccine would impose an undue hardship on the County, and the Court sees no relevance.  And even if this "changing story" argument were relevant, it is highly likely to confuse the jury.  Again, this does not go towards a question the jury must answer, and there is nothing about this case that explains why a "changing story" argument would assist a jury in answering the question of whether the County needed to accommodate Plaintiffs' objections to the COVID-19 vaccine.  For these reasons, County's motion eleven is GRANTED.  Plaintiffs may not reference or argue that the County is "changing its story" about its undue hardship defense.

## CONCLUSION

Accordingly, Plaintiffs' Motion in Limine, ECF No. 67, is GRANTED IN PART and DENIED IN PART.  Plaintiffs' motions one, two, three, five, seven, eight, ten, eleven, fourteen, and fifteen are GRANTED.  Plaintiffs' motions four, six, nine, and thirteen are GRANTED IN PART and DENIED IN PART— motion four is granted insofar as it bars any undisclosed expert opinion testimony and motion nine is granted insofar as it bars any evidence or testimony from witnesses not disclosed in compliance with Federal Rules of Civil Procedure 26(a), 33, and 34. Plaintiffs' motion thirteen's objection to fact C is denied.  Plaintiffs' motion six's request to exclude Dr. Asfour's statement that "[v]accination slashed the attack rate of COVID-19 in half" is denied, but the Court will bar the remaining two statements Plaintiffs identify, as well as any reliance upon the two cited studies.  Plaintiffs' motions twelve and sixteen are DENIED.

The County's Motion for Leave to File a Reply, ECF No. 74, is GRANTED and its Motion in Limine, ECF No. 71, is GRANTED IN PART and DENIED IN PART.  The County's motions one, two, three, four, five, eight, nine, ten, eleven, sixteen, seventeen, eighteen, and nineteen are GRANTED.  The County's motions six and seven are GRANTED as to prohibiting Plaintiffs' opinions about medical causation or diagnoses, but they are permitted to testify as to their subjective feelings and pain experienced, including stress and headaches.  The County's motions twelve and thirteen are GRANTED IN PART and DENIED IN PART.  Motion twelve's proposed facts A, B, and C are accepted as judicially noticeable, as well as the following altered version of proposed fact H: "In August 2021, Pope Francis encouraged those who held the Catholic faith to be vaccinated against COVID-19, calling doing so 'an act of love.'"  The County is DIRECTED to prepare an alternate version of exhibit fourteen omitting all data after October 2021.  The Court will take judicial notice of the altered exhibit fourteen as (1) evidence of the COVID-19 pandemic in Rock Island County and (2) an illustrative aid to assist the jurors in understanding at what stage of the pandemic the events in question transpired, and so the County's motion thirteen is GRANTED IN PART.  The County's motions fourteen and fifteen are DENIED.  The Clerk is directed to file the County's Reply, ECF No. 74-1, on the docket. This matter remains set for a five-day jury trial on May 18, 2026.

Entered this 13th day of May, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

31